**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kelly J.C.,[1]

    Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security*
*Administration*,

    Defendant.

Case No. 25-cv-2831 (DJF)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kelly J.C. ("Plaintiff") seeks judicial review of

the Commissioner of Social Security's ("Commissioner") final decision denying her application

for disability insurance benefits under Title II of the Social Security Act ("DIB") ("Decision").

Plaintiff challenges the Administrative Law Judge's ("ALJ") assessment of her residual functional

capacity and hypothetical question posed to the vocational expert.  She asks the Court to vacate

and reverse the Decision, or in the alternative, remand this matter to the Commissioner for a new

hearing.  (ECF No. 1.)  The Commissioner asks that the Decision be affirmed in its entirety.  (ECF

No. 16.)  This matter is before the Court on the parties' briefs.[2]  For the reasons given below, the

Court affirms the Decision.

---

[1] This District has adopted a policy of using only the first name and last initial of any
nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct
all proceedings in this case, including entry of the final judgment.

1

**BACKGROUND**

### I.     Plaintiff's Claim

Plaintiff applied for DIB on June 1, 2023,[3] with an alleged disability onset date of October 2, 2021.  (*See* Soc. Sec. Admin. R. (hereinafter "R.")  227-33).[4]  At that time she was a 53-year-old woman.  (R. 84.)  She had previously worked as an account manager and an eyeglass frame technician.  (R. 259.)  Plaintiff alleged she was disabled due to chronic atelectasis, autoimmune hepatitis, cirrhosis of the bile ducts, pulmonary nodules, moderate persistent asthma, disc bulge at L4/L5, attention deficit hyperactivity disorder ("ADHD"), carpal tunnel in both arms, degenerative disc disease, and morbid obesity.  (R. 257.)

### II.     Regulatory Background

An individual is considered disabled for purposes of DIB if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[A] 'physical or mental impairment' is an

---

[3]  In the hearing decision, the ALJ wrote that Plaintiff filed her DIB application on May 25, 2023.  (R. 109.)  Plaintiff said that she filed the application on June 1, 2023.  (ECF No. 12 at 1.)  June 1, 2023 is the day that her application was *completed*.  (R. 227.)  The date the application was filed makes no material difference to the analysis in this case, so the Court uses the date the application was completed in this Order.

[4] The Social Security administrative (R.) is filed at ECF No. 4. For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled.  20 C.F.R. § 404.1520(a)(4).  At step one, the claimant must establish that she is not engaged in any "substantial gainful activity."    20 C.F.R. § 404.1520(a)(4)(i).  The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  20 C.F.R. § 404.1520(a)(4)(iii).[5]  If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four.  The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v).

---

[5] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected.  *See* 20 C.F.R. Part 404, Subpart P, App. 1.

**III.   Relevant Procedural History**

An ALJ held a hearing on Plaintiff's application on May 8, 2024. (R. 15-43.) An attorney represented Plaintiff during the hearings, and Plaintiff and a vocational expert ("VE") testified. (*Id.*) After the hearing, the ALJ considered whether Plaintiff was disabled from October 2, 2021, Plaintiff's alleged disability onset date, through December 31, 2022, her date last insured. The ALJ issued her Decision on June 11, 2024. (R. 109-119.)

Plaintiff does not challenge the ALJ's findings at steps one and two of the sequential analysis. (*See* ECF No. 12 at 15.) The ALJ determined at step three of the sequential analysis that Plaintiff does not have an impairment that meets or is medically equal to an impairment in the Listing. (R. 111-113.)

Plaintiff's appeal primarily concerns the ALJ's RFC assessment and findings regarding Plaintiff's ability to perform past relevant work at step four. (*See* ECF No. 12 at 2-3.) The ALJ found that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes or scaffolds; occasional climbing of ramps or stairs; occasional stooping, kneeling, crouching and crawling; needed to avoid more than occasional exposure to extreme heat, wetness, or humidity; no more than occasional exposure to concentrated environmental irritants such as fumes, odors, dusts, and gases; needed to avoid exposure to unprotected heights or hazardous machinery.

(R. 114.)

Based on a hypothetical question that set forth Plaintiff's limitations consistent with the ALJ's RFC determination, the VE testified that Plaintiff could perform her past relevant work as an eyeglass frame technician. (R. 41, 118.) The ALJ thus concluded that Plaintiff was not disabled during the relevant period. (*Id.*)

4

Plaintiff appealed the ALJ's decision to the Appeals Council. (*See* R. 8-14.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-7), and this lawsuit followed.

## DISCUSSION

### I.  Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* But a court determining whether evidence is substantial must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful

appellate review). At a minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates. She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.     Analysis

Plaintiff argues on appeal that the ALJ misunderstood the severity of her impairments and, as a result, crafted an RFC that does not adequately account for all her limitations. She further contends the hypothetical question posed to the VE at step four, which mirrored the ALJ's RFC determination, did not encompass all her limitations. Though most of Plaintiff's memorandum is devoted to these two arguments, Plaintiff raises other arguments in passing, such as her contention that the ALJ erred by failing to obtain expert medical testimony at step three as to whether Plaintiff's impairments equal a Listing, and by neglecting to consider that she quit her most recent job before she was fired because she could not keep up. Her arguments are addressed in turn.

### A. The ALJ's RFC Determination

Plaintiff insists that the ALJ did not understand the severity and complexity of her impairments, so the ALJ's RFC determination is inaccurate. RFC is defined as the most a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545. It is the claimant's burden to prove her functional limitations related to her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556

6

(8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004).  However, the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations.  *Pearsall*, 274 F.3d at 1217.  Upon reviewing the record and the ALJ's Decision in this case, the Court concludes the ALJ properly considered the relevant evidence in reaching the determination of Plaintiff's RFC and that the ALJ's RFC determination is supported by substantial evidence.

Plaintiff's insistence that the ALJ did not fairly interpret her impairments and how the impairments interact is a non-starter, because this argument amounts to a request that the Court reweigh the evidence regarding her limitations.  The ALJ considered and addressed Plaintiff's impairments and the medical evidence addressing those impairments in crafting Plaintiff's RFC, (*see* R.  at 114-18), and "[i]t is not the role of this court to reweigh the evidence presented to the ALJ."  *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).

Plaintiff's claim further fails on the merits.  To support her argument, she cites her hearing testimony, the statements she made to her medical providers, and medical websites that describe her diagnosed conditions and explain some of the common symptoms of those conditions.  (ECF No. 12 at 4-10.)  Her arguments are unavailing.  The ALJ found Plaintiff's subjective statements were not entirely consistent with the medical evidence (R. 115), and Plaintiff did not expressly challenge that finding.  In any event, a claimant's statements about pain or other symptoms "will not alone establish" disability; instead, "there must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered

with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms *which may reasonably be accepted as consistent with the medical signs and laboratory findings*), would lead to a conclusion that [the claimant is] disabled." 20 C.F.R. § 404.1529(a) (emphasis added). This means that her subjective statements to her providers about her symptoms, though relevant, must be consistent with the medical findings to evidence disability.

Moreover, Plaintiff did not point to "objective medical evidence" showing her symptoms equate to functional limitations not included in the RFC. The information Plaintiff cites from medical websites about her diagnosed conditions do nothing to call into question the evidence supporting the ALJ's RFC determination. First, this information is not part of the Administrative Record. Second, a claimant's disability is established by objective medical evidence, not generic information from websites. 20 C.F.R. § 404.1529(a). Her diagnoses alone do not establish disability. A diagnosis "has minor significance one way or the other;" the "dispositive question" is whether the impairment limits the claimant's ability to function. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003).

What is left for the ALJ's review are the relatively few and benign medical records from treatment and office visits that occurred during the relevant period. The ALJ very thoroughly summarized that medical evidence and amply supported her RFC determination by reference to that evidence. (*See* R. 114-18.) For example, Plaintiff contends the ALJ improperly dismissed her testimony about experiencing fatigue from her autoimmune disease medications, and instead, the ALJ should have included an RFC limitation to account for her fatigue. (ECF No. 12 at 12.)

The ALJ discussed Plaintiff's autoimmune disease symptoms,[6] treatment, and complaints of fatigue. (R. 114-15.) The ALJ noted that Plaintiff's autoimmune medications appeared to control the symptoms and, notably, despite Plaintiff's testimony regarding fatigue, "the record does not reflect any complaints of fatigue/tiredness during the period under review." (R. 115.) The ALJ further found Plaintiff's reported activities of daily living were inconsistent with her subjective complaints, including, for example:  walking her dog six blocks each way; working in her garden; spending hours making cookies with her nephew; standing "hours upon hours" at her niece's graduation reception; helping her husband paint trim on their garage; and shoveling snow. (R. 117.) Upon careful review of the ALJ's Decision, the Court finds the ALJ considered the relevant medical records and Plaintiff's subjective complaints of fatigue in determining Plaintiff's RFC and supported the RFC with reference to medical evidence (or lack thereof) and other relevant evidence in the record.

The ALJ further discussed the medical evidence concerning the remaining severe impairments identified at step two: Plaintiff's breathing trouble, obesity, and degenerative disc disease.[7] This included evidence from both before and after the relevant period.  (R. 114-18.)

---

[6] Though the ALJ did not expressly acknowledge that Plaintiff was diagnosed with both autoimmune hepatitis *and* primary biliary cholangitis (which effects the bile ducts in the liver), the records the ALJ cites mention both conditions together, and the medication Plaintiff took treated both conditions.  The Court finds no reversible error in the ALJ's failure to mention primary biliary cholangitis by name in the Decision. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (internal citations omitted) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted ... [and][a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").  There is no reason to believe the ALJ ignored the disease, and any error is harmless considering both diseases are treated together by the same medication and treatment plan and there is no medical evidence in the record to suggest Plaintiff's primary biliary cholangitis resulted in appreciably different functional deficits.

[7] Plaintiff alleged physical conditions beyond degenerative disc disease in her application, such as carpal tunnel syndrome.  However, the ALJ found at step two that only degenerative disc

With respect to breathing issues, Plaintiff states that she has been diagnosed with bronchiectasis, asthma and atelectasis.  (ECF No. 12 at 5-7; *see also* R. 422, noting diagnosis of "mild, nonspecific bronchiectasis" and possible atelectatic lung, with recommendation to consider follow up in 1 year.)  But the ALJ reviewed Plaintiff's medical history regarding her respiratory issues in detail and concluded that the record does not support greater limitations than those assessed (R. 116), and Plaintiff does not explain how these diagnoses resulted in any functional limitations during the review period that the ALJ failed to include in her RFC.

The ALJ also considered how Plaintiff's obesity would impact her functional abilities, such as her range of motion and ability to tolerate environmental conditions.  (R. 116-17.)  To account for obesity and Plaintiff's lumbar degenerative disc disease, the ALJ limited Plaintiff in climbing, stooping, kneeling, crouching and crouching.  (R. 117.)

Plaintiff contends the ALJ did not "delineate" how she reached her conclusions about the impact of her obesity on her other conditions (ECF No. 12 at 7), but the Court is not persuaded that the ALJ made any reversible error.  The Eighth Circuit has "held that when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal.'"  *Heino v. Astrue,* 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Brown ex rel. Williams v. Barnhart,* 388 F.3d 1150, 1153 (8th Cir. 2004)).  Here, the ALJ stated that she considered the effects of Plaintiff's obesity along with Plaintiff's other impairments. Plaintiff cites just one medical record in her argument about obesity—a pulmonology function test post-dating the relevant period.  Her pulmonologist found some normal results but noted that "KCO is high with decreased ERV, this may indicate restrictive process such as Obesity."  (ECF No. 12 at 8, citing

---

disease and obesity were severe physical impairments.  (R. 111.)  Plaintiff does not challenge these step two findings.  (ECF No. 12 at 15.)

R. 404.) But the ALJ's RFC decision addressed Plaintiff's pulmonology function limitations by limiting her exposure to adverse environmental conditions and irritants. Plaintiff does not explain how the cited medical record establishes different functional limitations or otherwise shows reversible error in the ALJ's Decision.

Moreover, the State agency medical consultant opinions support the ALJ's RFC determination. (*See* R. 84-94; 96-104.) These consultants reviewed all the medical evidence created during the relevant period, including the evidence concerning Plaintiff's obesity, and found she can perform light, full-time work with appropriate restrictions. (*See, e.g.*, R. 102, stating Plaintiff's "obesity and lung conditions are primary contributors" to the consultant's recommended restrictions, including environmental limitations.) The ALJ found the medical consultants' opinions partially persuasive, rejecting only the consultants' limitation to occasional balancing because there was no indication in the record that Plaintiff had balance problems. (R. 117-18.) Plaintiff does not challenge this finding or the ALJ's evaluation of the persuasiveness of these opinions.

In summary, the ALJ crafted an RFC based on the available evidence Plaintiff submitted and on the State agency consultants' medical opinions. That RFC is supported by substantial evidence. Plaintiff's improper invitation for the Court to reweigh the evidence does nothing more than suggest her disagreement with the ALJ's decision, which is not cause for remand.

### B. VE Testimony

Plaintiff contends that the ALJ's hypothetical question to the VE was inadequate because it did not encompass a limitation accommodating Plaintiff's fatigue. (ECF No. 12 at 12-13.) To constitute substantial evidence, the vocational expert's testimony must be "based on a hypothetical [question] that captures the concrete consequences of the claimant's

deficiencies." *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quotation marks and citation omitted). The hypothetical need include only those impairments that the ALJ has found are substantially supported by the record as a whole. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996).

Plaintiff does not dispute that the ALJ's hypothetical to the VE contained all the limitations included in the ALJ's determination of Plaintiff's RFC. For the reasons stated above, the omission of a limitation to accommodate fatigue in the RFC was not erroneous and the RFC is supported by substantial evidence. It therefore follows that the omission of any fatigue-related limitation from the ALJ's hypothetical to the VE at step four of the sequential analysis was not reversible error. *Cf. Gann v. Berryhill*, 864 F.3d 947, 952-53 (8th Cir. 2017) (holding ALJ's step five analysis unsupported by substantial evidence because ALJ failed to pose hypothetical including all limitations from medical opinions found to be persuasive).

### C.    Waived Arguments

Plaintiff raised some of her arguments in such cursory fashion that the Court deems them waived. Among the reasons these arguments fail is that Plaintiff did not sufficiently develop them.

#### 1.    ADHD

Plaintiff's brief discusses her diagnosis with ADHD. (ECF No. 12 at 8-9.) The ALJ found at step two that Plaintiff's ADHD was non-severe, observing that this diagnosis "was noted by history throughout the record, but the evidence fails to provide any indication that she sought treatment for ADHD symptoms such as difficulty concentrating or focusing during the period under review." (R. 112.) Plaintiff contends the ALJ's finding that her ADHD was a non-severe impairment was "inaccurate." (ECF No. 12 a 9.) She noted that medical reports mention her ADHD diagnosis on the "Active Problem List" and a post-hearing, post-relevant period

neuropsychological examination found that she had difficulty with attention in some aspects of executive functioning. (ECF No. 12 at 8-9, citing February 4, 2025 neuropsychological exam, R. 45-50.) She says the ALJ's determination was inaccurate "[e]specially because" ADHD "is intermittently noted to be on the active list or the medical history list."

These records do not significantly alter the Court's conclusions. First, the fact that Plaintiff's doctors noted ADHD as an "active problem" does not suggest the condition was severe. The February 4, 2025 examination report found Plaintiff had largely normal psychological and intellectual functioning with "average to borderline" concentration scores. (R. 48.) The report further noted that though Plaintiff had previously benefitted from psychostimulant medication to treat her ADHD, she was "not particularly interested" in going back on that treatment again. (*Id.*) This record supports the ALJ's findings that Plaintiff's impairment with ADHD was non-severe and that she did not seek treatment for it during the relevant period; it does not suggest error.

Second, to the extent Plaintiff intended to make a step two argument, her insistence that the diagnosis of ADHD alone establishes error is a perfunctory attempt at argument. Plaintiff bears the burden at step two of the sequential analysis to show a severe impairment, though the burden at this step is "not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). Although severity is not an onerous requirement, "it is also not a toothless standard, and [the Eighth Circuit has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (collecting cases). A severe impairment is one that significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c). By contrast, an impairment that is not severe establishes "only a slight abnormality or a combination of slight abnormalities

13

which would have no more than a minimal effect on an individual's ability to work." SSR 85-28.

Plaintiff had to do more than call the ALJ's step two conclusion "inaccurate" to seek this Court's review of the ALJ's finding. She needed to point to medical evidence *from the relevant period* showing that her ADHD significantly limited her ability to perform work activities during that period and then show that the ALJ's step two finding lacks substantial evidentiary support in light of that medical evidence. She did not do this, and the Court will not scour the record and make the argument for her. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting "out of hand" a plaintiff's conclusory assertions where the plaintiff provided no analysis of the relevant law or facts).

Third, Plaintiff explicitly states in her memorandum that she "does not dispute the findings of ALJ VenderHeide regarding the first two steps of the sequential evaluation." (ECF No. 12 at 15.) This conflicts with her argument that the ALJ's finding at step two regarding the severity of her ADHD was "inaccurate". Given this conflicting statement, it is unclear exactly how Plaintiff contends the ALJ erred.

### 2.    Development of the Record

Plaintiff devoted two paragraphs of her memorandum to arguing that the ALJ failed in the duty to fully and fairly develop the record. Plaintiff argues that because she has two autoimmune diseases, the ALJ should have called a medical expert at the hearing to determine whether Plaintiff's impairments are medically equivalent to an impairment in the Listing. (ECF No. 12 at 15.) Though Plaintiff cites cases that establish an ALJ's duty to fully and fairly develop the record, (*id.* at 15-16), she fails to make the connection between those cases and how the failure to elicit expert medical testimony in this case requires remand. What is more, Plaintiff does not

14

acknowledge that the State agency physicians who opined on Plaintiff's RFC reviewed all the evidence from the relevant period and determined that her conditions did not meet or equal a listed impairment. (*See* R 89, 99.) In other words, she ignored the fact that the ALJ already had opinion evidence from medical experts concerning the Listings and did not attempt to explain why their expertise was insufficient. Moreover, Plaintiff made no effort to even suggest which Listing she believes her impairments meet or equal. Because Plaintiff did not develop the argument that the ALJ erred by failing to call a medical expert at the hearing to testify about the Listings, that argument is deemed waived. *Aulston v. Astrue*, 277 F. App'x 663, 664 (8th Cir. 2008) (finding plaintiff's "undeveloped" step three argument to be waived).

### 3.    Termination of Employment

Next, Plaintiff insists the ALJ improperly determined that she could return to her past work without mentioning the fact that she quit that job before she was fired because she could not keep up with the quota. (ECF No. 12 at 16.) She says the "ALJ did not incorporate the complexity of her condition into the hypothetical questions," to the VE so the ALJ's conclusion is invalid. (*Id.*) To support her argument, she cites case law establishing that ALJs cannot draw their own inferences from medical reports and that ALJs cannot substitute their opinions for those of the physicians. (*Id.* at 16-17.) The Court deems this argument waived. It is unclear how case law prohibiting ALJs from drawing their own medical inferences applies to the contention that the ALJ failed to consider why Plaintiff quit her job. And Plaintiff does not explain why failure to mention that she quit amounts to reversible error. The ALJ's RFC is supported by substantial evidence, as discussed above, so there was no reversible error at step four.

Plaintiff disagrees with the ALJ's weighing of the evidence, but she has not shown the ALJ's conclusions are legally erroneous. The Court accordingly affirms the Decision.

15

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.    Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**;

2.    The Commissioner's Request for Relief (ECF No. 16) is **GRANTED**;

3.    The Decision is **AFFRIMED**; and

4.    Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 31, 2026                                     *s/ Dulce J. Foster*
                                                               Dulce J. Foster
                                                               United States Magistrate Judge